NEIL SKOUSEN (10064)
Attorney at Law
P.O. Box 1771
Orem, UT 84059-1771
Tel. 801-376-6666
Fax: 801-225-4006
Email: Ndskousen@aol.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ANGELA HOENICKE,<br><br>                    Plaintiff,<br>vs.<br><br>MORONI FEED COMPANY, a domestic corporation based in the state of Utah;<br>NORBEST, INC., a domestic corporation based in the state of Utah;<br>PITMAN FARMS, INC., a foreign corporation based in the state of California; and,<br>PITMAN FAMILY FARMS, INC., a foreign corporation based in the state of California,<br><br>                    Defendants. | COMPLAINT<br><br>Case No. _____<br><br>Judge _____<br><br>Jury Trial Demanded |

Angela Hoenicke, hereby files this Complaint and makes allegations against Defendants MORONI FEED COMPANY, a domestic corporation based in the state of Utah; NORBEST, INC., a domestic corporation based in the state of Utah; PITMAN FARMS, INC., a foreign corporation based in the state of California; and, PITMAN

FAMILY FARMS, INC., a foreign corporation based in the state of California (collectively referred herein as the "Defendants"), as follows:

## NATURE OF THE CASE

This is an action against Defendants for damages and redress for denial of and in regards to Plaintiff's rights, who is protected by the Americans with Disabilities Act 42 U.S.C. §12112, et seq., as amended, and the Americans with Disabilities Act Amendments Act (collectively the ADA and its amendments referred to herein as the "ADA").

## PARTIES

1. Angela Hoenicke (hereinafter "Ms. Hoenicke" or "Plaintiff") is an individual residing in Sanpete County, State of Utah. At the times complained herein, Ms. Hoenicke was employed by Defendant as a Lidder, Scanner, and other job duties from approximately September 20, 2014 through January 18, 2016, when Plaintiff was unlawfully terminated. Plaintiff alleges she was retaliated against and terminated by Defendants based on her disability and the employer withdrawing and/or denying her requests for reasonable accommodations under the ADA.

2. Defendant Moroni Feed Company is a domestic corporation based in the state of Utah and is registered with the Utah Department of Commerce to do business in Utah. At all times complained of herein, this Defendant employed 15 or more employees and responded to EEOC's investigation in this matter. This Defendant was Plaintiff's employer.

3. Defendant Norbest, Inc. is a domestic corporation based in the state of Utah and is registered with the Utah Department of Commerce to do business in Utah. At all times complained of herein, Defendant employed 15 or more employees and responded to EEOC's investigation in this matter. This Defendant was Plaintiff's employer.

4. Defendant Pitman Farms, Inc. is a foreign corporation based in the state of California and is registered with the Utah Department of Commerce to do business in Utah. At all times complained of herein, Defendant employed 15 or more employees and responded to EEOC's investigation in this matter. This Defendant was Plaintiff's employer.

5. Defendant Pitman Family Farms, Inc. is a foreign corporation based in the state of California and is registered with the Utah Department of Commerce to do business in Utah. At all times complained of herein, Defendant employed 15 or more employees and responded to EEOC's investigation in this matter. This Defendant was Plaintiff's employer.

**JURISDICTION AND VENUE**

6. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331, 1343, and 42 U.S.C. §2000e-5(f)(3) in that this action arises under federal law, specifically the ADA. Pendent jurisdiction is proper in this Court pursuant to 28 U.S.C. §1367 for Defendants' actionable conduct under any state or common law claims related to the allegations, claims, and/or causes of action raised in this Complaint.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and 42 U.S.C. 2000e-5(f)(3). Defendants, and related business entities, conduct substantial business in this District and may be found and said to reside herein; upon information and

belief, Defendants have centralized workplace policies and a common set of personnel policies which it implements throughout its operations, including in Utah.

8. On or about August 12, 2016, Ms. Hoenicke timely filed a Charge of Discrimination against Defendants with the Utah Anti-Discrimination and Division, UALD No. B6-0463, and the Equal Employment Opportunity Commission, EEOC No. 35C-2016-00463. On or about October 11, 2016, Ms. Hoenicke timely filed the attached Amended Charge of Discrimination with the above state and federal agencies.

9. EEOC issued a Notice of Suit Rights to Ms. Hoenicke on November 6, 2018 (See attached Notice). This Complaint is filed within 90 days of Ms. Hoenicke's receipt of that Notice of Suit Rights letter from EEOC.

## FACTUAL ALLEGATIONS

10. On or about June 8, 2015, Ms. Hoenicke, Plaintiff, was working on Defendant's Scan Deck when Plaintiff injured her back while scanning turkeys at Defendant's plant.

11. Plaintiff let her supervisor know about the injury. Plaintiff was directed to go to the Central Utah Health Clinic to see Dr. Allen Day in Mt. Pleasant, Utah.

12. Defendant's Human Resources Department, Teresa Fowels, told Plaintiff to drive herself over to the Central Utah Health Clinic and said she would meet Plaintiff there.

13. Dr. Day diagnosed Plaintiff in the exam room with a back injury disability.

14. Dr. Day prescribed Plaintiff with the steroid, Prednisone.

15. The Prednisone did not help Plaintiff and made her feel jittery.

16. After Plaintiff had taken the Prednisone for ten days, and it continued to bother Plaintiff, she asked her employer if she could go see her own doctor. The employer said yes.

17. Plaintiff then made an August 10, 2015 appointment with Dr. Christie Mangelson of the Ft. Green Clinic.

18. On August 10, 2015, Dr. Mangelson agreed that Plaintiff had a back injury. Dr. Mangelson wrote a Doctor's note to continue Plaintiff on light duty at the plant.

19. Plaintiff has been diagnosed with the disability of lower back injury: L3-L5 discs. This lower back injury is a permanent disability and affects Plaintiff's ability to walk, stand, bending over, stooping, and lifting heavy objects with her body beyond a certain weight limit set by her doctors.

20. Dr. Mangelson directed Plaintiff to then see Dr. Yvonne Hsu. Dr. Hsu discussed Plaintiff's pelvic pain and said she did not believe the pelvic pain was related to Plaintiff's work injury sustained on the Scan Deck.

21. On or about October 12, 2015, Plaintiff started physical therapy.

22. The employer told Plaintiff could only engage in physical therapy on her own time.

23. Plaintiff attempted to maintain as many hours as possible at work and made good faith efforts to not miss work. Plaintiff sought the earliest appointments for her physical therapy sessions.

24. In the beginning of physical therapy, Plaintiff was going twice a week and would go to work after therapy.

25. Despite the pain she suffered, Plaintiff did not refuse to go to work.

26. While being in the Scanner Lidder position, the employer initial offered Plaintiff an accommodation of a stool to sit on but Plaintiff was unable to use the stool because she needed to be able to reach the turkeys and push a pedal.

27. Mr. Carlson and the Safety Director was aware of Plaintiff's 20 pound lifting limit.

28. Plaintiff was told by the therapist not to lift any weight until Plaintiff was re-evaluated. Plaintiff delivered the therapist note on such restrictions to the employer.

29. Despite these restrictions, the employer still expected Plaintiff to lift up to twenty pounds while at work.

30. On or about November 11, 2015, Plaintiff was returned to full duty.

31. The Safety Director told Plaintiff that she needed to meet with Dr. Colledge.

32. Plaintiff then set up an appointment for December 9, 2015.

33. Plaintiff had returned the doctor's paperwork to the employer indicated Plaintiff had restrictions on lifting.

34. In approximately mid-December 2015, Plaintiff had a meeting with the Human Resources Department representatives, Carlos and Norma.

35. At this meeting, the employer told Plaintiff that the employer would no longer be able to accommodate Plaintiff's restrictions.  The employer told Plaintiff that workers compensation would have to take over paying her.

36. Plaintiff was then sent home.

37. Plaintiff never refused to go to work.

38. Plaintiff provided documentation of her lifting restrictions to the employer on several occasions in 2015.

39. The workers compensation doctor had given Plaintiff restrictions that the employer was unwilling to accommodate further.

40. On or about January 18, 2016, Defendants terminated Plaintiff.

41. This employer informed Plaintiff they were terminating her because they were no longer able to continue to accommodate Plaintiff's light-weight lifting needs due to her disability.

42. When Plaintiff called this employer and asked for a letter of termination, the employer responded that unless it was for an unemployment claim, they did not have to comply with her request.

43. The employer refused to give Plaintiff a copy of any paperwork.

44. At all times herein, Plaintiff followed doctors orders keep her job and be eligible for reasonable accommodations that were either withdrawn or not provided.

## FIRST CAUSE OF ACTION
### (Violation of ADA – Discriminatory Treatment, Suspension, and/or Termination)

45. Plaintiff repeats and re-alleges by reference each and every allegation contained in this Complaint and incorporates the same herein as though fully set forth.

46. Defendants are covered entities under the ADA and within the meaning of 42 U.S.C. §12101, et seq., as amended.

47. At all times relevant to this action, Ms. Hoenicke was disabled within the meaning of 42 U.S.C. §12102, as amended.

48. At all times relevant to this action, Ms. Hoenicke was a qualified individual with a disability who was able to perform the essential functions of her job, with or without a reasonable accommodation appropriate under the circumstances.

49. Defendants knew of Ms. Hoenicke's disability, regarded her as disabled, and/or knew she had a record of such disability. It nonetheless suspended her, and then later terminated her, because of her disability.

50. Despite Defendant's knowledge, perception, and regard for Ms. Hoenicke's disability, Defendants were well aware of Ms. Hoenicke's restrictions on lifting and other daily activities at work.

51. As a direct result of her disability and Defendant's refusal to return Ms. Hoenicke back to her job, Defendants suspended and terminated Ms. Hoenicke in violation of the ADA.

52. Defendants conduct violates the ADA and as a result of such violation, Ms. Hoenicke is entitled to recover her compensatory damages in an amount to be established at trial, and she is entitled to an award of her lost wages, benefits, front pay in lieu of reinstatement, pre-judgment and post-judgment interest, and other damages.

53. Defendant's actions were willful and intentional and as such, Ms. Hoenicke is entitled to punitive damages in an amount to be determined at trial.

54. Ms. Hoenicke is also entitled to recover her reasonable attorney's fees and costs incurred herein.

## SECOND CAUSE OF ACTION
### (Failure to Meaningfully Engage in the Interactive Process and/or Withdrawal/Refusal of Accommodation)

55. Plaintiff repeats and re-alleges by reference each and every allegation contained in this Complaint and incorporates the same herein as though fully set forth.

56. The ADA requires employers to accommodate the known disabilities of their employees.

57. The ADA further requires an employer to engage in a meaningful and good faith interactive process with its disabled employees to determine a reasonable accommodation with respect to their jobs, and the time and manner in which such jobs and job functions are performed.

58. Defendants personnel, its medical professionals, and agents, failed to engage in a meaningful and good faith interactive process with Ms. Hoenicke, and it expressly refused to engage in making reasonable accommodations for her;

59. Ms. Hoenicke satisfactorily performed her job.

60. Ms. Hoenicke could have continued to perform her job with or without reasonable accommodation. In the alternative, Defendants could have made other reasonable accommodations to place Plaintiff in other suitable jobs in the workplace, but failed to engage with Plaintiff in a meaningful and good faith interactive process to determine such options.

61. Defendant's conduct violated the ADA, and as such, Ms. Hoenicke is entitled to recover her compensatory damages in an amount to be determined at trial, and she is entitled to make whole relief to include lost wages, benefits, front pay in lieu of reinstatement, pre-judgment and post-judgment interest, and other damages.

62. Defendants conduct was willful and intentional and as such, Ms. Hoenicke is entitled to punitive damages in an amount to be determined at trial.

63. Ms. Hoenicke is further entitled to recover her reasonable attorney's fees and costs incurred herein.

### THIRD CAUSE OF ACTION
### (Retaliation for Engaging in Protected Class Activity)

64. Plaintiff repeats and re-alleges by reference each and every allegation contained in this Complaint and incorporates the same herein as though fully set forth.

65. Plaintiff was engaged in protected opposition to discrimination by requesting reasonable accommodations in the workplace for her known disability;

66. Plaintiff was subject to an adverse employment action subsequent to or contemporaneous with the protected activity; and,

67. There is a causal connection between the protected activity and the adverse employment action – discrimination, suspension, and termination of her employment based on her disability.

68. Plaintiff requested reasonable accommodations were either denied, withdrawn or not implemented in retaliation by Defendants based on Plaintiff's disability.

69. The conduct of Defendants leading up to and including the wrongful discharge of Plaintiff's employment constitutes and unlawful retaliation against Ms. Hoenicke for engaging in the activity protected under the ADA and other applicable laws and authority.

### FOURTH CAUSE OF ACTION
### (Special Damages)

70. Plaintiff repeats and re-alleges by reference each and every allegation contained in this Complaint and incorporates the same herein as though fully set forth.

71. Ms. Hoenicke suffered a readily ascertainable loss of wages and benefits as a result of Defendant's actions, and as such, she is entitled to prejudgment interest on those losses.

72. Ms. Hoenicke also incurred additional and out of pocket medical expenses and further loss as a result of Defendant's actions, as to which she is entitled to reimbursement, plus accrued interest.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues which are triable to a jury.

## CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

A. On the Causes of Action, for judgment against Defendants for its discriminatory failure to accommodate, discriminatory suspension and discharge, and other violations of Ms. Hoenicke's rights under the ADA and adjudging it liable to Ms. Hoenicke for equitable and "make whole relief," including lost wages, employment benefits, prejudgment interest, post-judgment interest, and front pay in lieu of reinstatement, and other compensation which was denied or lost to her as a result of Defendant's discriminatory conduct in violation of the ADA;

B. On all Causes of Action, for judgment declaring that Defendants took adverse employment actions against Ms. Hoenicke in retaliation for his participation in protected activities/asking for reasonable accommodations under the ADA, and as a result,

for judgment finding Defendants liable to Ms. Hoenicke for all of her damages caused by the conduct, retaliation, including lost income, front pay, make whole and equitable relief, and such other damages and relief as are available under the law, including compensatory and punitive damages.

    C.    On all Causes of Action, for judgment against Defendants awarding Ms. Hoenicke special damages, including prejudgment interest on her wages, salary, employment benefits, or other compensation lost or denied to Ms. Hoenicke as a result of Defendant's ADA violations;

    D.    For judgment against Defendants awarding Ms. Hoenicke compensatory damages (including lost wages and benefits), and punitive damages in an amount to be established at trial;

    E.    For Plaintiff's reasonable attorneys' fees, reasonable expert witness fees, and any other costs of the action;

    F.    For pre-judgment interest from the date of all claims through current and post-judgment interest on all amounts awarded to Plaintiff herein accruing from the date of judgment to the date of satisfaction of judgment awarded herein; and,

    G.    For such other and further equitable relief as this Court deems appropriate under the circumstances including employment, front-pay in lieu of reinstatement, promotion, and all other appropriate remedies.

DATED this 7th day of February, 2019.

                */s/ Neil Skousen*
                Neil Skousen
                Attorney for Plaintiff